IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| AARON CARTER, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:16cv00123 |
| | ) | |
| v. | ) | |
| | ) | |
| L. J. FLEMING, *et al.*, | ) | By: Elizabeth K. Dillon |
|     Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Aaron Carter, a Virginia inmate proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983. Carter names as defendants: L. J. Fleming, the Warden of Wallens Ridge State Prison ("WARSP"); M. Broyles, the WARSP Food Service Manager; S. Stallard, the WARSP Food Services Director; and Ms. Gregg, the Dietician for the Virginia Department of Corrections ("VDOC"). Carter alleges that defendants violated the First and Fourteenth Amendments of the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.*, by not providing a diet that conforms to his religious beliefs. Defendants filed a motion for summary judgment, to which Carter responded, making this matter is ripe for disposition. After reviewing the record, the court grants defendants' motion for summary judgment.

I. BACKGROUND

Carter alleges that he is an adherent of the Nation of Islam ("NOI") and that the VDOC's Common Fare menu does not meet his religious dietary needs. The Common Fare menu is offered to inmates who have specialized and religious dietary needs, and it is designed to meet common religious dietary restrictions, like halal and Kosher. Carter believes that staff serves foods from the regular menu on the Common Fare menu, and he further complains that serving

fried foods, cooked vegetables, beans, sweet potatoes, white bread, white rice, and cake and not serving whole fruits, whole vegetables, or whole tuna on Common Fare menus violates his religious beliefs.

As a consequence of his belief that both the regular menu and Common Fare menu served the same foods, Carter consumed a Thanksgiving tray from the regular menu on November 26, 2015. Staff observed him eat foods from the regular menu and, per policy, suspended him from Common Fare for one year.

Carter argues that these alleged violations of his religious beliefs constitute violations of the First Amendment and RLUIPA and, further, that these violations of federal law constitute a violation of substantive due process guaranteed by the Fourteenth Amendment. Carter also argues that the First Amendment guarantees him an "adequate, nutritious and healthy diet." Carter seeks declaratory relief, injunctive relief, and damages.

Defendant Gregg, the VDOC Dietician, approves the Common Fare menus in advance of them being served at VDOC prisons. Except fruits and vegetables, all foods purchased and used for Common Fare are consistent with or are certified halal or certified Kosher. The Common Fare menu at WARSP includes foods different from the regular menu, but the regular menu may include foods served on the Common Fare menu like beans, vegetables, peanut butter, fruit juice, and beverages. Nonetheless, these Common Fare foods are still kept Kosher and are stored separately from non-Kosher items.

Carter signed a Common Fare Agreement on September 2, 2014, by which he acknowledged that, *inter alia*, he would not eat unauthorized foods from the regular menu. The penalties for that violation are a six-month suspension from Common Fare for the first offense; a one-year suspension for the second offense; and a four-year suspension for third and subsequent

violations. On December 9, 2015, Carter was served with notice of a hearing to adjudicate the violation for eating foods from the regular menu, and the hearing occurred on December 14, 2015. Based on a written report, the Institutional Classification Authority ("ICA") recommended that Carter be suspended from Common Fare for a year. Staff reviewed the ICA recommendation, determined that the suspension was appropriate, and suspended Carter from Common Fare for a year.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated a federal right. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). If the evidence of a genuine issue of fact material to the plaintiff's § 1983 claim "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs,

3

conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment, however. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial.").

### B. Substantive Due Process

One of Carter's claims is that the alleged violations of the First Amendment and RLUIPA constitute a violation of substantive due process guaranteed by the Fourteenth Amendment. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion); *see also Willis v. Town of Marshall,* 426 F.3d 251, 266 (4th Cir. 2005). Thus, the substantive due-process claim cannot proceed as it is "merely duplicative of claims explicitly protected under other constitutional sources." *Roman v. Velleca*, No. 11-CV-186, 2012 U.S. Dist. LEXIS 136946, at *30, 2012 WL 4445475, at *10 (D. Conn. Sept. 25, 2012). Accordingly, the substantive due process claim is subsumed by the First Amendment claim.

### C. Exhaustion of Administrative Remedies

Defendants argue that Carter failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a). The court finds that remedies were not available for claims about his suspension or that regular menu foods are served on the Common Fare menu.

4

However, the court finds that Carter failed to pursue available administrative remedies for any other claim.

The exhaustion requirement is mandatory and "applies to all inmate suits about prison life[.]" *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). When a prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust." *Id.*; *Dixon v. Page*, 291 F.3d 485, 490-91 (7th Cir. 2002). A defendant has the burden to prove an inmate's failure to exhaust available administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the plaintiff to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the plaintiff. *See, e.g.*, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process . . ., the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Carter submitted a regular grievance on January 11, 2016, complaining about his suspension and that regular menu foods are served as Common Fare foods. The facility grievance coordinator rejected the grievance at intake but permitted him to refile the grievance if Carter attached a copy of his ICA report. Carter did not follow those instructions. Instead, he appealed the intake decision to the Regional Ombudsman, who upheld the intake decision.

5

Carter argues that he had no choice but to appeal the rejection of his grievance because he asked staff numerous times for a copy of the ICA review form and staff repeatedly refused to give it to him. Because of staff's alleged unwillingness to give Carter the form, he was not able to resubmit the regular grievance with the attached documentation. Consequently, Carter has asserted sufficient facts to show, *arguendo*, that he was prevented from availing himself of administrative remedies through no fault of his own as to his suspension and regular menu foods being served as Common Fare foods. Accordingly, defendants are not entitled to judgment as a matter of law pursuant to 42 U.S.C. § 1997e(a) regarding the regular menu foods.

However, Carter fails to establish that he ever attempted to file a grievance about the Common Fare menu's nutrition or variety. Nothing in the record supports an inference either that the allegedly unobtainable ICA report was needed for a grievance about the nutrition or variety of Common Fare foods or that administrative remedies were otherwise unavailable. Accordingly, defendants are entitled to judgment as a matter of law pursuant to 42 U.S.C. § 1997e(a) for all other claims.

**D. First Amendment/RLUIPA Claims**

An inmate's First Amendment right to the free exercise of religion must be balanced with prisons' institutional needs of security, discipline, and general administration. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987). Thus, a correctional regulation or management decision that substantially burdens an inmate's constitutional right is valid if it is reasonably related to legitimate penological interests. *Lovelace v. Lee*, 472 F.3d 174, 199 (4th Cir. 2006). Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right … remain open to prison

> inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.

*Id.* at 200 (citing *Turner v. Safley*, 482 U.S. 78, 89-92 (1987)). The prisoner has the burden to disprove the validity of a prison regulation pursuant to the *Turner* analysis. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

RLUIPA, in relevant part, provides that no government shall impose a substantial burden on the religious exercise of an inmate unless the government demonstrates that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest.[1] 42 U.S.C. § 2000cc-1(a). A "substantial burden" on religious exercise occurs under the First Amendment or RLUIPA if it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or . . . forces a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand." *Lovelace*, 472 F.3d at 187. "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7).

Carter fails to establish that serving Common Fare foods on both the regular and Common Fare menus constitutes a substantial burden, and he fails to disprove the reasonableness of the suspension policy. *See, e.g.*, *Overton*, 539 U.S. at 132 (discussing a plaintiff's burden). Defendants explain that Common Fare foods satisfy halal and Kosher standards and that those same foods appear on the regular menu. While it is axiomatic that non-halal and non-Kosher foods should not be served on the Common Fare menu, there is no implication to Carter's

---

[1] "Government" includes the defendants, who work for the VDOC. 42 U.S.C. § 2000cc-5(4)(A).

religious rights by serving halal and Kosher foods on the regular menu. Carter has not offered any evidence based on personal knowledge, and nothing beyond speculation, to contradict defendants' evidence that Common Fare foods are kept halal and Kosher despite being served on the regular menu. Consequently, Carter fails to establish that serving halal and Kosher foods on the regular menu puts substantial pressure on him to abandon his religious practice.[2] Accordingly, Carter fails to establish a genuine dispute of material fact, and defendants are entitled to summary judgment.

### III. CONCLUSION

For the reasons set forth in this opinion, the court will grant defendants' motion for summary judgment.

Entered: March 15, 2017.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[2] Furthermore, Carter fails to allege any personal act or omission by a defendant other than Gregg, and Defendants cannot be held liable under a theory of *respondeat superior*. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 n.7 (1978).